UTICA,
October, 1820.

WOODWARD
v.
MURRAY.

---

WOODWARD *against* MURRAY.

The act in addition to the act relative to executions, passed *April* 18, 1815, (sess. 38. c.227.) exempting from execution, and distress for rent, *one cow,* &c. owned by any person, being "a householder," was intended for the benefit of poor *families;* and the father and husband, or head of the family, who has left the state, leaving his wife and children living together, is a "householder," within the meaning of the act.

IN ERROR, to the Court of Common Pleas of *Orange* County. *Murray* brought an action of *trover* against *Woodward* for a *cow*. The defendant pleaded the general issue. It appeared on the trial, that *M.* had gone to the state of *Ohio*; and had left his family, consisting of his wife and children, residing in the house which he had occupied. It was reported that he had absconded to avoid his creditors. His family, soon afterwards, in *March,* 1817, were about removing to the house of his wife's father, a few miles distant; and while they were on the road in a wagon, with their household furniture, and driving a cow, the only one which they possessed, *Isaac Young*, a constable, levied on the cow and the other goods, by virtue of an execution issued against

The *family* of M. were in the act of removing to the house of another, a few miles distant, and while on the road, in a wagon, their household furniture, and an only cow, were seized on an execution, and the *cow* taken and sold; *Held,* that the wife and children being together were still the family of M. and the cow was exempted from execution. The consent of the wife, that a cow, or a bed, might be taken and sold on execution, on the officer's releasing other articles not exempted by law, is not valid or binding, without special authority from her husband.

*M.* in favour of *W.* drove her off and sold her, and she was purchased by *W.* who, afterwards, sold her for 30 dollars. The defendant offered to prove that *M.* before the property was taken in execution, had absconded from the state, to avoid paying his debts, but the evidence was objected to, and overruled by the Court.   The defendant moved for a nonsuit, on the ground that the plaintiff was not a householder, nor a resident of the state, as the family had abandoned their habitation, because they were no longer able to keep house ; and that the plaintiff was not entitled to the exemption provided in " the act, in addition to an act, entitled, an act concerning judgments and executions," passed *April* 18, 1815, (a) by which one cow, among other things belonging to a householder, was exempted from execution, but the Court overruled the motion.   And the counsel for the defendant excepted to the opinion of the Court.   The defendant then proved, by the constable, that the execution was duly issued, and that when the *cow* and other things were seized, the wife of *M.* said she would give up the cow, if the witness would release the other property, which he agreed to do, and accordingly, with the consent of the wife and her father, the cow was given up to the constable, who released the other property.   *W.* was present all the time. A witness for the defendant testified, that he was present and heard no agreement as mentioned by the other witnesses.  The Court charged the jury, that *M.* was a householder within the meaning of the act, and that the cow was exempted from execution ; that if the wife did consent to the cow being taken, she had no legal authority to do so ; and the jury found a verdict for the plaintiff, for 35 dollars and 12 cents, on which the Court gave judgment.   A bill of exceptions was tendered by the defendant, on which a writ of error was brought to this Court.

UTICA,
October, 1820.

WOODWARD
v.
MURRAY.

(a) The act declares, " that all sheep, to the number of ten, together with the fleeces and the cloth manufactured from the same, one cow, two swine, and the pork of the same, all necessary wearing apparel and bedding, necessary cooking utensils, one table, six chairs, six knives and forks, six plates, six tea-cups and saucers, owned by any person being a householder, shall be exempted from execution, and distress for rent, any law to the contrary notwithstanding." (*sess.* 38. *ch.* 227.)

UTICA,
October, 1820.

WOODWARD
v.
MURRAY.

*Betts*, for the plaintiff in error, contended, that the cow of *M.* was not exempted from execution. He had absconded from the state, and gone to reside in *Ohio.* He was not a " householder," within the meaning of the act, which was intended for the benefit of persons actually resident here, keeping house together with, and supporting their families. This act being in restriction of the common law rights of creditors, ought to be construed strictly. (1 *Lord Raym.* 340.)

*Wisner*, contra, insisted, that the family of the plaintiff living together, constituted his household, though he was absent. He was, therefore, in the popular and legal sense, a householder. Though his family were removing a few miles from their former habitation, they were kept together, and were still a household. The statute ought to be construed liberally.

PLATT, J. delivered the opinion of the Court. There was an attempt by the defendant, at the trial, to show that the wife of *M.* consented to the taking of the cow, provided the officer would not seize the beds and other furniture; but I think that fact was not established; and, besides, I do not think the wife had a right to waive the husband's privilege, by turning out an only cow, in order to preserve other pro- perty which was not exempted from execution. Without special authority from her husband, a wife has no right to direct the officer to sell a cow, or a bed, articles exempted by law, in order to preserve such as are not exempted.

The evidence rather shows, that the consent of the wife (if she gave any) was extorted by the officer, who told her, that her husband was not then a householder; and that he had a right to levy on any of the property.

The real question is, whether *Murray* was a " household- er," so as to entitle him to the exemption under the act of the 18th of *April*, 1815, (sess. 38. ch. 227.) which exempts from execution, one cow, &c. owned by any person " *being a householder.*"

According to the lexicographers, household means " a family living together," and a " householder" " a master

of a family." Sacred scripture, in the same sense, declares, "he that provideth not for his own household, is worse than an infidel." I think it clear, that the legislature meant to confer this privilege on each of those little primary communities called *families*. *Murray* had gone to *Ohio*, leaving his wife and children living together as a family. They were his *household*, and he was the "*householder*." To say, that a family, while in the act of removal, and on the highway, may be deprived of their bed, and their cow, on execution, because they did not, for the time, inhabit a dwelling-house, would be a perversion of the statute. So long as they remain together *as a family*, without being broken up, and incorporated into other families, the privilege remains. It was designed as a protection for poor and destitute families; and the forlorn and houseless condition of this family, in the absence of the husband and father, gave them a peculiar claim to the benefit of the statute.

I am, therefore, of opinion, that in sustaining the action, the Court below decided correctly; and that the judgment ought to be affirmed.

Judgment affirmed.