CLAUS LAFRINZ, Plaintiff, *v.* PAYNE WHITNEY and Others, as Executors, etc., of OLIVER H. PAYNE, Deceased, Defendants.

First Department, February, 4, 1921.

Submission of controversy — right of court to draw inferences — wills — construction of bequest to " each person  *  *  * customarily employed as part of my household " as including watchman.

The court is not at liberty to draw inferences from facts stipulated on the submission of a controversy on an agreed statement of facts.

The plaintiff was entitled to take under a bequest in a will by which general legacies were made " to each person  *  *  *, who at the time of my death shall be in my service and shall then be customarily employed as part of my household," where it appeared that the plaintiff at the time of the testator's death was in his service and had been for eighteen years " customarily and continuously employed as a watchman watching the exterior " of testator's town house; that the contract of employment was oral, and that the plaintiff performed his work under the supervision of the testator or the butlers employed by him from time to time, and his compensation was paid monthly by the butler, though it did not appear where he ate or slept.

The plaintiff was customarily employed as part of testator's household, since he performed his duties exclusively in and about the premises and under the supervision of a butler, who customarily supervises the performance of the duties of household servants.

SMITH, J., dissents.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 1279 of the Code of Civil Procedure.

*Gustav Goodmann,* for the plaintiff.

*Edwin De T. Bechtel* of counsel [*Sidney Wetmore Davidson* with him on the brief; *Carter, Ledyard & Milburn,* attorneys], for the defendants.

LAUGHLIN, J.

The point presented by this submission relates to the construction of the will of Oliver H. Payne, who died on the 27th of June, 1917, and whose will was duly admitted to

probate by a surrogate of New York county on the 16th of August, 1917. The submission does not show when the will was executed, but it appears that the testator maintained a country house in Ulster county and a town house known as No. 582 Fifth avenue, in the borough of Manhattan, New York. At the time of the death of the testator the plaintiff was, and continuously for more than eighteen years had been in his service " and customarily and continuously employed as a watchman watching the exterior " of the said town house and premises. The contract of employment was verbal and was personally negotiated by the testator and the term of employment commenced on the 2d day of May, 1899. The plaintiff performed his duties under the immediate supervision of the testator and butlers employed from time to time by the testator, and his compensation was paid monthly by the butler. The will contains certain specific and general legacies and the submission shows that after their payment there will remain not less than $100,000 as the residuary estate. The plaintiff is not named as a specific legatee and he is not referred to by name in the will. He claims a legacy under the paragraph of the will bequeathing general legacies which is as follows:

" To each person, not hereinbefore named, who at the time of my death shall be in my service and shall then be customarily employed as part of my household in my house in New York City or in my country house in Ulster County, New York, the sum of three thousand dollars, if he or she shall have been in my service for two years, with the further sum of two hundred dollars for each year, or portion of year in excess of two years, and the sum of one thousand dollars if he or she shall have been in my service for less than two years."

It is stipulated that the plaintiff is entitled to recover of the executors $6,400 and interest thereon from the 16th of August, 1918, if he is included in the general provisions of the will herein quoted.

It is evident that the submission could have been made more definite by stating expressly whether the plaintiff received his board from the testator and ate in the house with the domestic servants, and whether he was furnished sleeping accommodations there. It may be that inferences favorable

to the plaintiff with respect to these matters could be drawn from the facts stipulated, but on a submission the court is not at liberty to. draw inferences. The point presented for decision depends upon the intent of the testator (See *Tilden* v. *Green*, 130 N. Y. 29, 51; *Lewisohn* v. *Henry*, 179 id. 352, 361); and I am of opinion that the facts stipulated sufficiently show his intent to give a legacy to the plaintiff under these general provisions. It is stipulated, in effect, that the plaintiff was on duty under this employment continuously for upwards of eighteen years and that his duties were to watch the exterior of the house and premises. The submission does not · show from what point or points he watched the house or premises; but it is not a strained construction of these provisions of the will intended to reward loyal or faithful services of employees in and about the household of the testator to hold that the plaintiff in the performance of those duties during this long period of years, evidently to the satisfaction of the testator, was deemed by the testator to be customarily employed as part of his household in his town house. It is stipulated that he performed his duties under the supervision of the testator and of the butlers from time to time employed by the testator, and that he was paid monthly by the butler. In these circumstances I think the stipulated facts fairly show that the employment of the plaintiff was in and about the town house of the testator, for it is neither stipulated nor is it to be presumed that the plaintiff performed his duties and ate his meals exclusively on the public street or sidewalk outside of the house and premises, both in summer and in winter and did not enter the house at all in connection with his employment, or that the testator or his butler went outside the premises to give him orders and to supervise his work and to pay him his monthly compensation. From the nature and place of employment the plaintiff must from time to time have been in and about the part of the house used by the household servants. The fact that the performance of his duties was in part supervised by the butler and that he was paid by the butler shows that he was in effect regarded by the testator as a domestic servant and that the compensation paid to him was regarded by the testator as a part of the expense of maintaining the town house. It would, I think,

be unreasonable to hold that the testator intended to reward all of his household servants, some of whom doubtless performed services outside of the town house, and not to reward the plaintiff whose services were exclusively performed at the premises in guarding the property of the testator and himself and his family and other servants. There can be no position of employment embodying greater trust and confidence than this employment of the plaintiff by the testator. It would be strange, indeed, if the testator intended to reward all others in his employ at his town house and to make no provision for the plaintiff who had rendered loyal and efficient services of this particularly intimate and confidential nature involving the utmost fidelity, evidently to the entire satisfaction of the testator for so long a period. Doubtless it may not be said that in any and all circumstances a watchman employed to guard a house and premises and the occupants thereof is part of the household; but if he lived in the house and took his meals there, clearly he would be. (*Woodward* v. *Murray*, 18 Johns. 400; *Matter of Drax* [*Savile* v. *Yeatman*], 57 L. T. [Ch. D.] 475; *Pippin* v. *Jones*, 52 Ala. 161, 165; *Perkins* v. *Morgan*, 36 Col. 360.) But we are not definitely informed with respect to those facts, which might have removed all possible doubt with respect to the construction of the will. We cannot, however, infer that these were or were not facts. We must construe the will on the facts submitted if they are sufficient to enable us to do so. They are evidently the only facts that either party deems material. Regardless, therefore, of where the plaintiff slept or ate, it is stipulated that he was there continuously. If that did not require him to be there day and night, doubtless his hours of duty would have been stipulated or, at least, it would have been stated that he was a day watchman or a night watchman. I deem it quite clear that the testator intended that he should with the other household servants, with whom the testator in placing him under the supervision of the butler with respect to duties and payment of his salary, classified him, take a legacy under these provisions of the will. Judgment, therefore, should go in favor of the plaintiff unless the phraseology employed by the testator is not susceptible of a construction that will enable the plaintiff to take. I think it is.

One definition given by the Century Dictionary of " house-

hold " is as follows: "An organized family and whatever pertains to it as a whole; a domestic establishment." It is also stated in the American and English Encyclopædia of Law (Vol. 15 [2d ed.], p. 773): "The general definition of household when used as a qualifying word, is pertaining to or belonging to the house or family." It is to be borne in mind also that the phraseology of the will does not confine the legacies to those who were *in fact* part of the household of the testator, and if it did, it may be that the determining inquiry would be whether the plaintiff was one of his domestic servants (See *Woodward* v. *Murray, supra; Matter of Drax [Savile* v. *Yeatman], supra; Pippin* v. *Jones, supra; Perkins* v. *Morgan, supra*), but it extends to all those customarily employed as part of his household in his town house. Since the plaintiff performed his duties exclusively in and about the premises and under the supervision of a butler, who customarily supervises the performance of the duties of household servants, I think the testator regarded the plaintiff as customarily employed as part of his household. The words " in my house " are manifestly not to be construed literally and should be deemed to mean in and about or at the house. (See *Bush Brothers Lumber & Milling Co.* v. *Eastwood*, 132 S. W. Rep. [Tex.] 389, 392.)

Bequests to servants generally have been held to embrace all in the employ of the testator regardless of whether their services were performed exclusively or in part within the house. (See *Thrupp* v. *Collett*, 26 Beav. 147; *Armstrong* v. *Clavering*, 27 id. 226.)

The defendants rely principally upon *Frazer* v. *Weld* (177 Mass. 513). The court there construed a bequest to each one of the servants of the testator " who at the time of my death shall have been in my employ at my homestead or at the stable connected therewith, a period of four consecutive years, the sum of one thousand dollars each," as using the word " homestead " in a restricted sense and meaning dwelling house and construed the bequest as not including a gardener who performed no services either in or about the house or stable; but in so doing the court stressed the fact that the word " homestead " could not be construed in a broad sense for it was limited by the reference to the stable connected therewith.

First Department, February, 1921.          [Vol. 195.

It follows that the plaintiff is entitled to judgment according to the submission which provides that no costs are to be allowed.

CLARKE, P. J., PAGE and MERRELL, JJ., concur; SMITH, J, dissents.

Judgment ordered for plaintiff, without costs.   Settle order on notice.