ALBERT W. GIVENS, Respondent, v. PAYNE WHITNEY and Others, as
Executors, etc., of OLIVER H. PAYNE, Deceased, Appellants.

*Wills — construction — gift to each person not specifically named who, at
time of death of testator shall " be customarily employed as part of my
household," held to include electrician living in cottage on testator's country
estate.*

Appeal by the defendants, Payne Whitney and others, as executors, etc.,
from a judgment of the Supreme Court in favor of the plaintiff, entered in
the office of the clerk of the county of Ulster on the 8th day of December,
1920, upon the decision of the court.

Judgment affirmed, with costs, on the authority of *Lafrinz* v. *Whitney*
(195 App. Div. 131). All concur, except Woodward, J., dissenting.

WOODWARD, J. (dissenting): Oliver H. Payne died leaving a last will
and testament in which, after making certain specific legacies to his house-
keeper, to his sailing master, and other servants and employees, he provided
as follows: " To each person, not hereinbefore named, who at the time
of my death shall be in my service and shall then be customarily employed
as part of my household in my house in New York city or in my country
house in Ulster county, New York, the sum of three thousand dollars, if he
or she shall have been in my service for two years, with the further sum
of two hundred dollars for each year, or portion of a year, in excess of two
years, and the sum of one thousand dollars if he or she shall have been in
my service for less than two years." In the case of *Lafrinz* v. *Whitney*
(195 App. Div. 131) the court, in construing the above clause upon an agreed
case, no other part of the will being disclosed in the pleadings, held that a
watchman employed for eighteen years in guarding the New York house
came within the description, and it is urged that that case is controlling here.
It seems to us, however, that the reasoning of that case, based upon a mere
abstract provision of an unusually complete and accurate will, is far from
conclusive of the matter here under consideration, where an electrician,
residing with his family upon the estate of the testator, performed semi-
professional services in connection with the electrical equipment of the
premises for a period of six years, and as an incident to that employment
visited the mansion from time to time to supply new electric light bulbs,
keep the carpet cleaner in electrical repairs, and other such work, having
no immediate personal relation to the testator. It appears from the record
now before us that the testator had a home in New York city; that he had
an estate at Thomasville, Ga., and still another at West Park, Ulster county,
N. Y., where he spent the most of his time between June and October in
each year. In addition to these landed estates he was the owner of a yacht,
fully manned and equipped, and the inference is justified that but a short
portion of the year was spent at the town residence, and as the watchman
was not shown to have any stated time of employment as night watchman
or day watchman, it might well be said, in support of the judgment in the
case of *Lafrinz* v. *Whitney* (*supra*) that he appeared rather to be a general
caretaker of the New York house than a mere watchman, and so might

fall within the language of the will as being " customarily employed as part of my household in my house in New York city." Be this as it may, however, we are now called upon to determine whether this electrician, occupying a cottage upon the estate with his own family, was " customarily employed as part of my household in my  *  *  *  country house in Ulster county," and we are persuaded from a reading of the entire will, which was not before the court in the case above cited, that the testator could not have used the language to the end here contended. " I would wish all readers that expound statutes," says Lord Bacon in his " Reading on the Statute of Uses," " to do as scholars are willed to do; that is, first to seek out the principal verb; that is, note and single out the material words whereupon the statute is framed; for there are in every statute certain words which are as veins where the life and blood of the statute cometh, and where all doubts do arise, and the rest are *literæ mortuæ*, fulfilling words;" * and this is as true of wills as of statutes. Looking to the scheme of the will, the 1st clause provides comparatively small specific legacies to two cousins, a nephew and a friend; and in the same connection an old tapestry to the Metropolitan Museum of Art, and a set of Audubon's Birds and Quadrupeds to the New York Zoological Society. The 2d clause gives to Frank S. Rollins the sum of $25,000, and this is followed by other gifts of $3,000 to $5,000 to certain persons named " if she shall be employed in connection with my affairs at the time of my death," this second group evidently contemplating extra compensation for persons in charge of his immediate business affairs. Then follows the third group within which the plaintiff claims to find a place. It is introduced by these words, " which are as veins where the life and blood " of the instrument cometh: " I give and bequeath the following additional legacies, with my tender farewell and warm thanks for faithful and careful attendance." At the head of this group stands his housekeeper, Emma Christina Larson, who is given $50,000, without qualification of any kind. She is followed by " my sailing master, Charles W. Scott, if he shall be in my employment at the time of my death, the sum of twenty-five thousand dollars." Then, upon the same condition, he gives from $3,000 down to $1,000 each to his chief steward of his yacht, his chef, his assistant chef, his carpenter, boatswain and quartermaster of his yacht, naming each one of them. Then to " Julian Burroughs, superintendent of my country place at West Park, Ulster county, New York, if he shall be in my employment at the time of my death, the sum of five thousand dollars, and to his wife, Emily M. Burroughs, if she or her husband shall be in my employment at the time of my death, the sum of five thousand dollars." The discriminating power of the testator is aptly discovered in the provision for the wife of his superintendent of the Ulster county premises — " if she or her husband shall be in my employment " — while in the case of F. C. Loveless, " superintendent of my country place at Thomasville, Georgia," there is a gift of $5,000, upon a like condition, and to his wife, Mary Loveless, " if she

---

* See. Bacon's Law Tracts, p. 334.— REP.

shall be in my employment at the time of my death, the sum of five thousand dollars." This is followed by the provision for George Taylor, " my chauffeur, if he shall be in my employment at the time of my death, the sum of three thousand dollars," and the third group of named individuals closes with a provision for " Ingeborg Hornsleth, now employed in my household at Thomasville, if she shall be in my employment at the time of my death," in the sum of $3,000, and then " to each person, not hereinbefore named," in the language first above quoted. It is rather difficult to conceive of the testator sending a " tender farewell and warm thanks for faithful and careful attendance," to a man living with his own family a half a mile away from the mansion, and whose nearest personal contact attempted to be traced in the evidence was that of keeping the electric pad in condition to warm the testator's stomach in the event of indigestion. He had no trouble in naming his ship carpenter, his boatswain, his chef, and others who were in a position to render " faithful and careful attendance," and these he provided for with discrimination, giving the ship carpenter $1,500 and the boatswain $2,000, while the quartermaster was to have but $1,000; yet it has been held that the plaintiff, who did not apparently come into personal contact with the testator, is entitled to $3,000, and to the extra $200 per year for several years, making an aggregate of $4,229. Every person who was in a position to personally attend upon the testator, and who was not " customarily employed as part of my household in my house in New York city or in my country house in Ulster county, New York," appears to have been picked out and provided for in accordance with the importance of his position and the degree of fidelity to the service, and by the blanket provision for " each person, not hereinbefore named, who at the time of my death shall be in my service and shall then be customarily employed as part of my household in my house in New York city or in my country house in Ulster county," he clearly intended to exclude all other persons in his general employ who had not been named. The beneficiary must not only have been " in my service," but he must have been then " customarily employed as part of my household." This language was clearly intended to exclude some of the general employees. It is equally certain that the special provisions for general employees were intended as excluding such general employees about the estate and upon his yacht as were not included (Aultman & Taylor Co. v. Syme, 163 N. Y. 54, 57; Tucker v. Alexandroff, 183 U. S. 424, 436), and the doctrine of ejusdem generis would seem to confine the plaintiff to the class of general employees, rather than that of the non-enumerated persons making up the household in the ordinary understanding of that word. Persons holding official positions in the employ of the testator; persons holding positions to which a name is usually given, were provided for by the designation of the position and the name of the person holding the office, and if it had been intended to provide for the electrician financially and " with my tender farewell and warm thanks for faithful and careful attendance " it is difficult to suppose that the testator would have departed from the deliberate scheme of the will, and included him among the miscellaneous household servants.

His position was of equal dignity with that of the carpenter or chauffeur; equal to that of boatswain and chef; but he was not mentioned by name or by his position of electrician, and it is only by a forced and unnatural use of language that he can be included among the household servants, a relation he would undoubtedly be the first to deny except for the hope of maintaining the judgment now before us. A watchman guarding the city home, in the absence of a more definite statement than that contained in the agreed case in *Lafrinz* v. *Whitney* (*supra*) may be included within the language and intent of the testator, but the electrician for the Ulster county estate was not " customarily employed as part of my household " within the contemplation of the testator if the purpose to exclude any of the general employees of the estate is to be found within the scheme of the will, as we think it is. The judgment should be reversed, and judgment for the defendants should be entered, with costs.